AO 93  (Rev. 12/09) Search and Seizure Warrant  (USAO CDCA Rev. 01/2013)

ORIGINAL

# UNITED STATES DISTRICT COURT
### for the
### Central District of California

| | | |
|---|---|---|
| In the Matter of the Search of | ) | **15 - 1676M** |
| *(Briefly describe the property to be searched* | ) | |
| *or identify the person by name and address)* | ) Case No. | |
| Information associated with the account identified as | ) | |
| jacksoncyh@yahoo.com that is stored at premises | ) | |
| controlled by Yahoo!, Inc., located at 701 First Avenue, | ) | |
| Sunnyvale, California 94089. | ) | |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ Northern _____ District of _____ California _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

See Attachment B

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.  Such affidavit is incorporated herein by reference.

**YOU ARE COMMANDED** to execute this warrant on or before _____ 14 days from the date of its issuance _____
*(not to exceed 14 days)*

☑ in the daytime  6:00 a.m. to 10 p.m.      ☐ at any time in the day or night as I find reasonable cause has been established.

You must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge
on duty at the time of the return through a filing with the Clerk's Office.
*(name)*

IT IS FURTHER ORDERED that the Provider named in Attachment A shall comply with the further orders set forth in Attachment B, and shall not notify any person, including the subscriber(s) of each account identified in Attachment A, of the existence of the warrant.

Date and time issued:  9/8/15  2:37pm          _____
                                                                          *Judge's signature*

City and state:   Los Angeles, California          Suzanne H. Segal, U.S. Magistrate Judge
                                                                          *Printed name and title*

AUSA:Stephanie Christensen

*AO 93  (Rev. 12/09) Search and Seizure Warrant (Page 2)*

| **Return** | | |
|---|---|---|
| Case No.:<br>15-1676M | Date and time warrant executed:<br>09/08/15  11:25AM (BST) | Copy of warrant ~~and inventory~~ left with:<br>Custodian of Records |
| Inventory made in the presence of : | | |

Inventory of the property taken and name of any person(s) seized:

[Please provide a description that would be sufficient to demonstrate that the items seized fall within the items authorized to be seized pursuant to the warrant (e.g., type of documents, as opposed to "miscellaneous documents") as well as the approximate volume of any documents seized (e.g., number of boxes).  If reference is made to an attached description of property, specify the number of pages to the attachment and any case number appearing thereon.]

Yahoo! Inc. provided one compact disc (CD) containing e-mails and account information.

---

**Certification** (by officer present during the execution of the warrant)

*I declare under penalty of perjury that I am an officer who executed this warrant and that this inventory is correct and was returned along with the original warrant to the designated judge through a filing with the Clerk's Office.*

Date: 11/13/15

Bennett Hong
Executing officer's signature

Bennett Hong   Special Agent
Printed name and title

## ATTACHMENT A

### PROPERTY TO BE SEARCHED

This warrant applies to information associated with the account identified as jacksoncyh@yahoo.com that is stored at premises controlled by Yahoo!, Inc., a company that accepts service of legal process at 701 First Avenue, Sunnyvale, CA 94089.

## ATTACHMENT B

### ITEMS TO BE SEIZED

## I.   SEARCH PROCEDURE

1.   The search warrant will be presented to personnel of
Yahoo!, Inc. (the "PROVIDER"), who will be directed to isolate
the information described in Section II below.

2.   To minimize any disruption of service to third
parties, the PROVIDER's employees and/or law enforcement
personnel trained in the operation of computers will create an
exact duplicate of the information described in Section II
below.

3.   The PROVIDER's employees will provide in electronic
form the exact duplicate of the information described in Section
II below to the agent who serves the search warrant.

4.   With respect to contents of wire and electronic
communications produced by the PROVIDER (hereafter, "content
records," see Section II.10.a below), law enforcement agents
and/or individuals assisting law enforcement and acting at their
direction (the "search team") will examine such content records
pursuant to search procedures specifically designed to identify
items to be seized under this warrant.  The search shall extract
and seize only the specific items to be seized under this
warrant (see Section III below).  In conducting this search, the

search team shall take notes regarding how it conducts the
search.

5.    If the search team encounters immediately apparent
contraband or other evidence of a crime outside the scope of the
items to be seized, the team shall immediately discontinue its
search pending further order of the Court and shall make and
retain notes detailing how the contraband or other evidence of a
crime was encountered, including how it was immediately apparent
contraband or evidence of a crime.

6.    The search team will complete its search of the
content records as soon as is practicable but not to exceed 60
days from the date of receipt from the PROVIDER of the response
to this warrant.   If additional time is needed, the government
may seek an extension of this time period from the Court within
the original 60-day period.

7.    Once the search team has completed its review of the
content records and created copies of the items seized pursuant
to the warrant, the original production from the PROVIDER will
be sealed -- and preserved by the search team for authenticity
and chain of custody purposes -- until further order of the
Court.   Thereafter, the search team will not access the data
from the sealed original production which fell outside the scope
of the items to be seized absent further order of the Court.

8.    The special procedures relating to digital data found
in this warrant govern only the search of digital data pursuant
to the authority conferred by this warrant and do not apply to
any search of digital data pursuant to any other court order.

9.    Pursuant to 18 U.S.C. § 2703(g) the presence of an
agent is not required for service or execution of this warrant.

## II.   INFORMATION TO BE DISCLOSED BY THE PROVIDER

10.    To the extent that the information described in
Attachment A is within the possession, custody, or control of
the PROVIDER, including any information that has been deleted
but is still available to the PROVIDER, or has been preserved
pursuant to a request made under 18 U.S.C. § 2703(f), the
PROVIDER is required to disclose the following information to
the government for each SUBJECT ACCOUNT listed in Attachment A:

a.    All contents of all wire and electronic
communications associated with the SUBJECT ACCOUNT, from account
creation to present, including:

i.    All e-mails associated with the SUBJECT
ACCOUNT, including stored or preserved copies of e-mails sent to
and from the account, draft e-mails, and deleted e-mails, as
well as all header information associated with each e-mail, and
any related documents or attachments.

ii.    All records or other information stored by
subscriber(s) of the SUBJECT ACCOUNT, including address books,

iii

contact and buddy lists, calendar data, pictures, notes, texts, links, user profiles, account settings, access logs, and files.

          iii. All records pertaining to communications between the PROVIDER and any person regarding the SUBJECT ACCOUNT, including contacts with support services and records of actions taken.

       b.   All user connection logs and transactional information of all activity relating to the SUBJECT ACCOUNT described above in Section II.10.a, including all log files, dates, times, durations, data transfer volumes, methods of connection, IP addresses, ports, routing information, dial-ups, and locations.

       c.   **Any and all cookies** used by any computer or web browser associated with the SUBJECT ACCOUNT, including the dates and times associated with the recognition of any such cookie;

       d.   All subscriber information pertaining to **any other account accessed using any of the same cookies that have been used to access the SUBJECT ACCOUNT (and identified above in paragraph II.10.c)**, including the date on which the account was created, the length of service, the IP address used to register the account, the subscriber's full name(s), screen name(s), other account names or e-mail addresses associated with the account, telephone numbers, physical addresses, and other identifying information regarding the subscriber, the types of

iv

service utilized, account status, account settings, login IP
addresses associated with session dates and times, as well as
means and source of payment, including detailed billing records.

## III. INFORMATION TO BE SEIZED BY THE GOVERNMENT

11.  For each SUBJECT ACCOUNT listed in Attachment A, the
search team may seize:

a.  All information described above in Section
II.10.a that constitutes evidence, contraband, fruits, or
instrumentalities of violations of 18 U.S.C. §§ 1030(a)(2)(c),
(a)(4) (Unauthorized Access to Computer and Obtaining
Information, with Intent to Defraud), 18 U.S.C. §§ 1343, 1344
(wire and bank fraud) and 18 U.S.C. § 1028A (aggravated identity
theft), namely:

i.  Information relating to who created,
accessed, or used the SUBJECT ACCOUNT, including records about
their identities and whereabouts;

ii.  Evidence indicating how and when the SUBJECT
ACCOUNT was accessed or used, to determine the chronological and
geographic context of account access, use, and events relating
to the crime under investigation and to the account owner;

iii.  Information related to the access of bank
accounts in names other than the subscriber of the SUBJECT
ACCOUNT;

v

            iv.   Information relating to wire transfers and other bank transactions;

            v.   Information relating to IP address: 71.199.215.24 or Travelodge;

            vi.   Information relating to computer programs or software that can be used to obtain or secure unauthorized access to a computer or computer network, including the actual use, development, or operation of such programs or software;

            vii. Information relating to Elite Professional Corporation ("Elite"), East West Bank Länsförsäkringar Bank or Nordjyske Bank;

            viii.   Information related to any Elite employee including but not limited to ZHU;

            ix.   Information relating to the results or effects of any unauthorized computer access, including deleting or overwriting files, exfiltrating or transferring data, evading detection, warnings or messages to victims conveyed by means of such access, or other damage, theft, or loss resulting from such access;

            x.   Information relating to any files, information, folders, or other data taken from the computers, networks, e-mails, or any other information owned or maintained by Elite;

    xi. Information relating to communications between the SUBJECT ACCOUNT and other persons, accounts, or computers that involve unauthorized access of protected computers, including but not limited to unauthorized access into computer systems as well as to any individuals or computers that may be controlling or participating in the unauthorized access, to include computer logs, personal messages, and/or e-mail related to the unauthorized access;

    xii. Information relating to explaining or illustrating methods for gaining access to computers or computer networks, including how to configure or use computer hardware, software, or other related items for purposes of gaining access to computers and/or computer networks;

    xiii. Information relating to the identity of any person using an e-mail account that was the sender or recipient of any e-mails seized pursuant to any of the categories above;

  b. All records and information described above in Sections II.10.b, II.10.c, and II.10.d.

## IV. PROVIDER PROCEDURES

  12. IT IS ORDERED that the PROVIDER shall deliver the information set forth in Section II within 10 days of the service of this warrant.  The PROVIDER shall send such information to:

BENNETT HONG
11000 WILSHIRE BOULEVARD, SUITE 1700
310-996-3836 (FAX)
bennett.hong@ic.fbi.gov

13.   IT IS FURTHER ORDERED that the PROVIDER shall provide the name and contact information for all employees who conduct the search and produce the records responsive to this warrant.

14.   IT IS FURTHER ORDERED that the PROVIDER shall not notify any person, including the subscriber(s) of each account identified in Attachment A, of the existence of the warrant.

**AFFIDAVIT**

I, Bennett Hong, being duly sworn, declare and state as follows:

## I.    INTRODUCTION

1.    I received a B.A. in both Economics and East Asian
Studies from the University of California, Los Angeles in 2002,
and an M.A. in Negotiation, Conflict Resolution and
Peacebuilding from California State University, Dominguez Hills
in 2007.  I was employed as a U.S. Customs and Border Protection
Officer from 2002 to 2005, and an Investigative Specialist with
the Federal Bureau of Investigation ("FBI") from 2005 to 2008.
I am a Special Agent ("SA") with the FBI, and have been so
employed for approximately six years.  I am currently assigned
to the Los Angeles Field Office, where I specialize in the
investigation of computer and high-technology crimes, including
computer intrusions, denial of service attacks and other types
of malicious computer activity.  During my career as an FBI SA,
I have participated in various computer crime investigations as
well as national security investigations.  In addition, I have
received both formal and informal training from the FBI and
other institutions regarding computer-related investigations and
computer technology.

2.    I make this affidavit in support of an application for
a search warrant for information associated with the account
identified as jacksoncyh@yahoo.com (the "SUBJECT ACCOUNT") that

is stored at premises controlled by Yahoo!, Inc. (the

"PROVIDER"), a provider of electronic communication and remote

computing services, headquartered at 701 First Avenue,

Sunnyvale, CA 94089.[1]  The information to be searched is

described in the following paragraphs and in Attachment A.  This

affidavit is made in support of an application for a search

warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), 2703(c)(1)(A)

and 2703(d) to require the PROVIDER to disclose to the

government copies of the information (including the content of

communications) described in Section II of Attachment B.  Upon

receipt of the information described in Section II of Attachment

B, law enforcement agents and/or individuals assisting law

enforcement and acting at their direction will review that

information to locate the items described in Section III of

Attachment B.  Attachments A and B are incorporated herein by

reference.

---

[1] Because this Court has jurisdiction over the offense(s)
being investigated, it may issue the warrant to compel the
PROVIDER pursuant to 18 U.S.C. §§ 2703(a), (b)(1)(A), (c)(1)(A).
See 18 U.S.C. §§ 2703(a) ("A governmental entity may require the
disclosure by a provider . . . pursuant to a warrant issued
using the procedures described in the Federal Rules of Criminal
Procedure . . . by a court of competent jurisdiction") and 2711
("the term 'court of competent jurisdiction' includes -- (A) any
district court of the United States (including a magistrate
judge of such a court) or any United States court of appeals
that -- (i) has jurisdiction over the offense being
investigated; (ii) is in or for a district in which the provider
of a wire or electronic communication service is located or in
which the wire or electronic communications, records, or other
information are stored; or (iii) is acting on a request for
foreign assistance pursuant to section 3512 of this title").

3.     As described more fully below, I respectfully submit
there is probable cause to believe that the information
associated with the SUBJECT ACCOUNT constitutes evidence,
contraband, fruits, or instrumentalities of criminal violations
of 18 U.S.C. §§ 1030(a)(2)(c), (a)(4) (Unauthorized Access to
Computer and Obtaining Information, with Intent to Defraud), 18
U.S.C. §§ 1343, 1344 (wire and bank fraud) and 18 U.S.C. § 1028A
(aggravated identity theft).

4.     The facts set forth in this affidavit are based upon
my personal observations, my training and experience, and
information obtained from other agents and witnesses.  This
affidavit is intended to show merely that there is sufficient
probable cause for the requested warrant and does not purport to
set forth all of my knowledge of or investigation into this
matter.  Unless specifically indicated otherwise, all
conversations and statements described in this affidavit are
related in substance and in part only.

## II.   SUMMARY OF INVESTIGATION

5.     The FBI is investigating fraudulent wire transfer
requests related to the unauthorized access to e-mail accounts
affiliated with an employee of Elite Professional Corporation
("Elite").  The employee was an Elite Financial Advisor with
power of attorney over the accounts of a client.  The employee's
Yahoo! business e-mail accounts were compromised and were used

3

to send two fraudulent requests to transfer money from the victim-client's bank account to accounts overseas. One of the two fraudulent wire transfer requests was successful and $69,000 was stolen from the victim-client. The SUBJECT ACCOUNT is one that was fraudulently created in the victim-client's name to facilitate the scheme.

### III. STATEMENT OF PROBABLE CAUSE

6.   On or about April 23, 2015, the FBI received a complaint from Katie Zhu ("ZHU"), who is an employee of Elite located in the City of Industry, CA.  During this and in a subsequent interview with the FBI, ZHU provided the following information, which I know about through reading FBI reports of these contacts:

a.   Jackson Yen Huang ("HUANG") is an Elite client and ZHU is HUANG's Elite financial advisor and handles HUANG's finances.  Elite has a power of attorney over aspects of HUANG's finances and as such, ZHU is authorized to make wire transfers on HUANG's behalf to different business ventures.

b.   HUANG was the victim of wire fraud. Specifically, on or about April 08, 2015, a fraudulent wire transfer in the amount of $69,000 was processed, drawing funds from one of HUANG's bank accounts with East West Bank, 379 South Diamond Bar Boulevard, Diamond Bar, CA 91765, and was transferred to an account at Länsförsäkringar Bank in Sweden, held under the name of "Raafat Tawadrous."

4

   c.   On or about April 21, 2015, a second fraudulent
wire transfer in the amount of $90,000 was initiated but was
canceled due to a lack of sufficient funds in HUANG's bank
account.   The wire transfer was slated to go to a bank account
in Denmark at Nordjyske Bank, held under the name of Emma Zimoh.

   d.   ZHU found out about the fraudulent wire transfers
on or about April 21, 2015, after talking to an East West Bank
representative, Samsonz Lam ("LAM").   LAM called ZHU to advise
her that HUANG's account did not have sufficient funds to cover
the $90,000 wire transfer to Denmark, which ZHU had supposedly
requested via e-mail earlier in the day.   ZHU informed LAM that
she did not authorize any wire transfer requests in the amount
of $90,000 nor did she send LAM any e-mails regarding such.

   e.   ZHU further discovered that on or about April 06,
2015 (later determined to actually be April 08, 2015), an e-mail
from her work account, katie@eliteppp.com, was sent to East West
Bank requesting a wire transfer for HUANG in the amount of
$69,000 to a bank in Sweden.   Ryan Lo ("LO"), a customer service
representative at East West Bank, sent a reply to
katie@eliteppp.com (ZHU's same genuine e-mail account)
requesting more information from HUANG.   A response to that
request was sent from the SUBJECT ACCOUNT to katie@eliteppp.com,
which was then forwarded on to LO (This created an e-mail string
making it appear as though HUANG had authorized ZHU to wire the
money because the SUBJECT ACCOUNT (jacksoncyh@yahoo.com)
contained HUANG's first name (Jackson), and middle and last
initials.)   ZHU had not actually participated in any parts of

the e-mail conversation and did not authorize anyone else to use her e-mail account. According to ZHU, HUANG was also not aware of the wire transfer requests and did not initiate or authorize them.

7.   On May 13, 2015, I reviewed copies of the e-mails between the SUBJECT ACCOUNT, katie@eliteppp.com, LAM and LO, that ZHU provided to the FBI. Additionally, on the same day, I received copies of the same e-mails from Jenny Mooc, Risk Management Supervisor, Risk & Operations Department, at East West Bank. A review of the e-mails confirmed ZHU's report regarding the e-mails.

8.   On July 01, 2015, I learned from records obtained from the PROVIDER that the SUBJECT ACCOUNT was created on April 08, 2015 (the same day as the first fraudulent wire transfer request) from the IP address 71.199.215.24. The same records indicated that the account was still active but that no login activity was logged since the account was created. A "WhoIs" query of the IP address revealed that it was registered to Comcast.

9.   On July 17, 2015, I learned from records obtained from Comcast that for the relevant time period the IP address 71.199.215.24 resolved to a Travelodge located in Okeechobee, Florida. Also, on July 17, 2015, I called a publicly listed phone number for the Okeechobee Travelodge and spoke with "Varun" (Last Name Unknown), who told me that he was the manager of the Travelodge. Varun indicated that the Wi-Fi internet service at his Travelodge was complimentary and unsecured

(required no password), and that one did not have to be a paid
guest at the hotel to utilize the connection.  In addition,
Varun referred me to the hotel's Wi-Fi management company.  I
spoke to a representative of that company who informed me that
no logs of user activities were kept.

10.   On May 13, 2015, I was forwarded a copy of a
notification ZHU had received from the PROVIDER regarding a
suspicious login attempt to her e-mail account
katie_elite@yahoo.com.  The notification advised that on April
09, 2015 at 4:33AM GMT+8 (the same day as the first fraudulent
wire transfer when adjusted for the time zones) someone tried to
sign in to the aforementioned e-mail account from an
unrecognized device in Singapore.

11.   On May 28, 2015 and on June 01, 2015, I learned from
records obtained from the PROVIDER that the e-mail accounts of
katie_elite@yahoo.com and katie@eliteppp.com were one and the
same.  The latter e-mail account was a business account hosted
by the PROVIDER but was linked to the former account as hosted
by the PROVIDER.  Thus, e-mails that were sent and/or received,
were mirrored in each account.

12.   A review of the records also did not reveal any
account logins on April 8, 2015, which, as discussed above, was
the date of the fraudulent e-mail string was transmitted from
the SUBJECT ACCOUNT to a representative of East West Bank.

7

13. Based on my training and experience, discussions with other law enforcement officers, and a conversation with a Yahoo! representative, I know that the lack of login activity does not necessarily mean that the account was inactive for that period. In fact, the fraudulent e-mails sent from the account show that it was being used despite the lack of logins. The lack of logins may be due to the fact that the account was continuously logged into since creation; alternatively, it may be due to the fact that the user accessed the account through a mobile application.

14. Other than what has been described herein, to my knowledge the United States has not attempted to obtain the contents of the SUBJECT ACCOUNT by other means.

## IV. BACKGROUND REGARDING E-MAIL AND THE PROVIDER

15. In my training and experience, I have learned that the PROVIDER provides a variety of online services, including e-mail, to the public. The PROVIDER allows subscribers to obtain e-mail accounts at the domain name www.yahoo.com, like the SUBJECT ACCOUNT. Subscribers obtain an account by registering with the PROVIDER. During the registration process, the PROVIDER asks subscribers to provide basic personal information. Therefore, the computers of the PROVIDER are likely to contain stored electronic communications and information concerning subscribers and their use of the PROVIDER's services, such as

8

account access information, e-mail transaction information, and account application information. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the user(s) of the SUBJECT ACCOUNT.

16. A subscriber of the PROVIDER can also store with the PROVIDER files in addition to e-mails, such as address books, contact or buddy lists, calendar data, pictures (other than ones attached to e-mails), notes, and other files, on servers maintained and/or owned by the PROVIDER. In my training and experience, evidence of who was using an e-mail account may be found in such information.

17. In my training and experience, e-mail providers generally ask their subscribers to provide certain personal identifying information when registering for an e-mail account. Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative e-mail addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number). In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the user(s) of the SUBJECT ACCOUNT.

9

18.   In my training and experience, e-mail providers
typically retain certain transactional information about the
creation and use of each account on their systems.  This
information can include the date on which the account was
created, the length of service, records of login (i.e., session)
times and durations, the types of service utilized, the status
of the account (including whether the account is inactive or
closed), the methods used to connect to the account (such as
logging into the account via the provider's website), and other
log files that reflect usage of the account.  In addition, e-
mail providers often have records of the Internet Protocol
("IP") address used to register the account and the IP addresses
associated with particular logins to the account.  Because every
device that connects to the Internet must use an IP address, IP
address information can help to identify which computers or
other devices were used to access the SUBJECT ACCOUNT.

19.   In my training and experience, e-mail account users
will sometimes communicate directly with an e-mail service
provider about issues relating to the account, such as technical
problems, billing inquiries, or complaints from other users.  E-
mail providers typically retain records about such
communications, including records of contacts between the user
and the provider's support services, as well records of any
actions taken by the provider or user as a result of the

10

communications.   In my training and experience, such information

may constitute evidence of the crimes under investigation

because the information can be used to identify the user(s) of

the SUBJECT ACCOUNT.

20.   I know from my training and experience that the

complete contents of an e-mail account may be important to

establishing the actual user who has dominion and control of

that account at a given time.   E-mail accounts may be registered

in false names or screen names from anywhere in the world with

little to no verification by the service provider.   They may

also be used by multiple people.   Given the ease with which e-

mail accounts may be created under aliases, and the rarity with

which law enforcement has eyewitness testimony about a

defendant's use of an e-mail account, investigators often have

to rely on circumstantial evidence to show that an individual

was the actual user of a particular account.   Only by piecing

together information contained in the contents of an account may

an investigator establish who the actual user of an account was.

Often those pieces will come from a time period before the

account was used in the criminal activity.   Limiting the scope

of the search would, in some instances, prevent the government

from identifying the true user of the account and, in other

instances, may not provide a defendant with sufficient

information to identify other users of the account.   Therefore,

the contents of a given account, including the e-mail addresses and messages sent to that account, often provides important evidence regarding the actual user's dominion and control of that account. For the purpose of searching for content demonstrating the actual user(s) of the SUBJECT ACCOUNT, I am requesting a warrant requiring the PROVIDER to turn over all information associated with the SUBJECT ACCOUNT for review by the search team.

21. Because two of the primary purposes of the investigation at this point are to identify the individual(s) responsible for the business e-mail compromise and to determine the scope of the scheme, I request that the PROVIDER provide the entire content for the SUBJECT ACCOUNT since inception (April 08, 2015) until the time the requested warrant is served on them, and that the items to be seized set forth in detail below permit law enforcement to seize such items without limit as to time in order to assist in identifying the individuals participating in this scheme and the scope of their activities.

22. Further, because the SUBJECT ACCOUNT appears to have been created for the specific purpose of committing fraud and the account was created the same day it was used to send a fraudulent e-mail in furtherance of the criminal activity, I am requesting the entire contents of the account without a date range restriction.

23.  Relatedly, the government must be allowed to determine whether other individuals had access to the SUBJECT ACCOUNT.  If the government were constrained to review only a small subsection of an e-mail account, that small subsection might give the misleading impression that only a single user had access to the account.

24.  I also know based on my training and experience that criminals discussing their criminal activity may use slang, short forms (abbreviated words or phrases such as "lol" to express "laugh out loud"), or codewords (which require entire strings or series of e-mail conversations to determine their true meaning) when discussing their crimes.  They can also discuss aspects of the crime without specifically mentioning the crime involved.  In the electronic world, it is even possible to use pictures, images and emoticons (images used to express a concept or idea such as a happy face inserted into the content of an e-mail or the manipulation and combination of keys on the computer keyboard to convey an idea, such as the use of a colon and paren :) to convey a smile or agreement) to discuss matters. "Keyword searches" would not account for any of these possibilities, so actual review of the contents of an e-mail account by law enforcement personnel with information regarding the identified criminal activity, subject to the search

13

procedures set forth in Attachment B, is necessary to find all relevant evidence within the account.

25. Based on my training and experience, I also know that networks and hierarchies of individuals involved in hacking and computer intrusions are often extensive and have many layers. Often times certain individuals involved in acquiring the information or directing its acquisition may not be actively engaged in directing a particular step of the procurement, but are kept informed, often by receiving or sending carbon copies ("cc's") from or to others on e-mail communications. In order to fully identify the extent and nature of the network--and thus the conspiracy--it is important to obtain e-mail communications that may not show participation by the user of a particular account, but that will help identify that person and their role in the network.

26. I also know that a user's e-mail account can include photographs or other notes in the contact list or address book regarding people with whom the user is in contact, information that is either automatically imported from social media sites, or data or files actively entered by the user of the e-mail account. Therefore, I request authority to seize documents related to the identity of the user of any e-mail account included on communications relevant to the computer intrusion and attack described herein.

27.   In part for that reason, the requested e-mail search warrant specifically requests any and all logs of user activity, including web requests or HTTP request, web server logs, web access logs, login tracker logs, account management logs, web proxy logs, and any other information concerning web sites navigated to or analytics related to the SUBJECT ACCOUNTS. Furthermore, those records can show other actions taken in furtherance of the conspiracy, such as whether the user used Yahoo!, the PROVIDER, to run queries (for example, to identify personnel to whom he would send the e-mail, or other online reconnaissance in preparation for the attack), or other accounts logged into by the user.

28.   In order to identify other accounts used or maintained by the user of the SUBJECT ACCOUNT, the warrant also calls for the PROVIDER to disclose any cookies associated with the SUBJECT ACCOUNT, i.e., those cookies in place on any computers or web browsers (for example, Internet Explorer or Google Chrome) used to access the SUBJECT ACCOUNT.  The warrant also calls for the PROVIDER to identify any other accounts accessed by any computer or web browser using the same cookies.  Such accounts may be other e-mail accounts, document storage accounts, or social media accounts.

29.   As set forth in Attachment B, I am requesting a warrant that permits the search team to keep the original

15

production from the PROVIDER under seal until the investigation
is completed and, if a case is brought, that case is completed
through disposition, trial, appeal, or collateral proceeding.

     a.   I make that request because I believe it might be
impossible for the PROVIDER to authenticate information taken
from the SUBJECT ACCOUNT as its business record without the
original production to examine.  Even if the PROVIDER kept an
original copy at the time of production (against which it could
compare against the results of the search at the time of trial),
the government cannot compel the PROVIDER to keep a copy for the
entire pendency of the investigation and/or case.  If the
original production is destroyed, it may be impossible for the
PROVIDER to examine a particular document found by the search
team and confirm that it was a business record of the PROVIDER's
taken from the SUBJECT ACCOUNT.

     b.   I also know from my training and experience that
many e-mail accounts are purged as part of the ordinary course
of business by providers.  For example, if an e-mail account is
not accessed within a specified time period, it -- and its
contents -- may be deleted.  As a consequence, there is a risk
that the only record of the contents of an e-mail account might
be the production that a provider makes to the government, for
example, if a defendant is incarcerated and does not (perhaps
cannot) access his or her e-mail account.  Preserving evidence,

therefore, would ensure that the government can satisfy its Brady obligations and give the defendant access to evidence that might be used in his or her defense.

## V.   REQUEST FOR NON-DISCLOSURE

30.   Pursuant to 18 U.S.C. § 2705(b), I request that the Court enter an order commanding the PROVIDER not to notify any person, including the subscriber(s) of the SUBJECT ACCOUNT, of the existence of the warrant because there is reason to believe that such notification will result in: (1) flight from prosecution; (2) destruction of or tampering with evidence; (3) otherwise seriously jeopardizing the investigation; or (4) unduly delaying trial.  The details of the current investigation set forth above are not public, and I know, based on my training and experience, that persons engaged in unauthorized access, intrusions and fraud will destroy digital evidence if they learn of an investigation.  In addition, if the PROVIDER notifies the target(s) of the investigation that a warrant has been issued for the SUBJECT ACCOUNT, the target(s) might further mask their activity and seriously jeopardize the investigation.

## VI.   CONCLUSION

31.   Based on the foregoing, I request that the Court issue the requested search warrant.


_____
BENNETT HONG, Special Agent
FEDERAL BUREAU OF INVESTIGATION

Subscribed to and sworn before me
On September 8 , 2015.


_____
UNITED STATES MAGISTRATE JUDGE

18